## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAIDMOND HANSBREW,  )
   Plaintiff,   )
        )  Civil Action No. 114—2020
  v.      )
        )  **Complaint**
JOSHUA Allison,   )
        )  **<u>JURY TRIAL DEMANDED</u>**
   Defendant.

### COMPLAINT

AND NOW COMES, Plaintiff Raidmond Hansbrew, by and through his attorney, Sunwabe Law Firm and Charles Kwalonue Sunwabe Jr., Esquire, avers as follows:

### Jurisdiction and Venue

1. This action arises in part under 42 U.S.C. § 1983.

2. Jurisdiction over Plaintiff's claims is conferred on the Court by 28 U.S.C. §§1331, 1343 and 1367.

3. Venue in this District is proper pursuant to 28 U.S.C. §1391(b).

### The Parties

4. Plaintiff incorporates the preceding paragraphs by reference as though set fully herein.

5. Plaintiff, Raidmond Hansbrew (hereinafter "Plaintiff" or "Hansbrew") is a resident of the City of Erie in Erie County, Pennsylvania.

6. Defendant, Joshua Allison (hereinafter "Defendant Allison"), is an adult individual who currently resides in the Western District of Pennsylvania.

7. At all times relevant thereto, Defendant Joshua Allison was a police officer for the Erie Police Department. He is being sued in his individual capacity.

8. At all times relevant, Defendant Allison acted under color of law.

## **Facts**

9. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

10. On or about May 14, 2018, at approximately 8.00 pm, Defendant, Joshua Allison responded to a domestic complaint phone called made by Plaintiff's girlfriend.

11. After speaking with Plaintiff's girlfriend, Defendant Allison approached Plaintiff, and after a brief conversation, placed him under arrest. At all times relevant thereto, Plaintiff was fully compliant with Defendant Allison's request and order.

12. Suddenly and without any provocation from Plaintiff, Defendant Allison became angry and started to physically assault Plaintiff. Plaintiff did not fight back or do anything that may have been construed as aggressive while he was being assaulted. When Plaintiff asked Defendant Allison why he was being assaulted, Defendant Allison became more enraged, spat at Plaintiff and slammed him into the gravel pavement.

Simultaneously, Defendant Allison directed profanities and insults towards Plaintiff. This pattern of verbal and physical abuse was punctuated with a loud voice that consistently ordered Plaintiff to "shut up and be quiet".

13. As a result of the Defendant Allison's actions, Plaintiff sustained a head injury and began to bleed. When Plaintiff asked him to stop the unprovoked assault, Defendant Allison again responded by saying that "this is what you get for talking back to an officer".

14. Subsequently, Defendant Allison ordered Plaintiff into the police cruiser and transported Plaintiff to the Erie Police Department on State Street.
Upon arriving at the Erie Police Department, Defendant Allison took Plaintiff to the processing window so that Plaintiff could be booked. While waiting to be processed, Defendant Allison continued to verbally abuse and spit at Plaintiff. Again, Plaintiff politely asked Defendant Allison to stop the unnecessary and unprovoked insults and attacks.

15. At this juncture, Defendant Allison anger intensified. In a stunning display of violence, Defendant Allison body slammed Plaintiff's head into the hard cement wall/cement pavement located in the processing area at the Erie Police Department on State Street.  It is important to note that during this time, Plaintiff was already in handcuffs and was not a threat to anyone including Defendant Allison.

16. The impact of Plaintiff being slammed into the cement wall was so severe that Plaintiff lost consciousness. Plaintiff had no recollection regarding what

happened next except that Plaintiff woke up in a jail cell at the Erie Police

Department, lying in a pool of blood.

17. At this point, Plaintiff was in severe pain, and had serious laceration and deep

cuts to his head.

18.   As his pain and bleeding intensified, Plaintiff cried for help. Each call for

help went unheeded as no "on duty Erie Police officer" was responded to

Plaintiff's repeated call for help.

19. Determined to get desperately needed help, Plaintiff began shouting louder.

20.  Finally, a female police officer investigated Plaintiff's unrelenting call for help

by observing Plaintiff's jail-cell via a video camera.  She noticed that Plaintiff

was seriously hurt. However, she casually gave Plaintiff a bandage and left

Plaintiff lying in agony in a pool of blood.

21.  Shortly thereafter, Plaintiff intensified his call for help. Another Erie Police

officer appeared and started the process of getting Plaintiff actual assistance.

22. Subsequently, Plaintiff was transported to UPMC Hamot Hospital, where he

received more than 20 stiches to his head and he was given some pain

medication. Plaintiff was taken back to Erie Police Department and placed in

another holding cell. After a few hours, His pain returned along with a severe

headache.

23. During this time, Erie Police transported Plaintiff to Erie County Jail. Upon

arrival, Erie County Jail refused to accept Plaintiff noting that his "head

injuries were concerning, and that Plaintiff needed a head CT Scan". Erie

County Jail went on to point out that Plaintiff would not be accepted in the
condition that Plaintiff was in.

24. Plaintiff was then transported back to UPMC Hamot Hospital, where Plaintiff
underwent a head CT Scan.

25. While all this was going on, Defendants Allison filed a bogus complaint
against Plaintiff alleging Aggravated Assault.  Subsequently, the Aggravated
assault charge was withdrawn.

26.  At all times relevant to the within complaint, Defendant Allision's penchant
for brutality turned a peaceful arrest into a brutal display of unprovoked police
violence that landed Plaintiff into the hospital on the aforesaid night.

27. The repeated use of unjustified force was unnecessary under the circumstance
because Plaintiff was already handcuffed and in custody.

28. Lamentably, Defendant Allison felt inclined to brutalize Plaintiff while
dismissing Plaintiff's legitimate concerns regarding the brutality he was being
subjected to.

29. From the outset, Plaintiff asked Defendant Allision to state exactly
what Plaintiff had done wrong to deserve the rough treatment and physical
assault. As noted previously, Defendant Allison repeated told Plaintiff to shut
up.

30. Since the aforesaid incident, Plaintiff continued to experience severe pain,
headache, and emotional distress.

31. More troubling, Plaintiff's headache and pain are continuing and there seem to
be no end in sight. Particularly significant, Plaintiff continued to have severe

episodes of emotional distress, anxiety, and sleeplessness. These symptoms are directly correlated to the physical assault that Plaintiff suffered at the hands of the Defendant.

**COUNT I**
**Fourth Amendment Excessive - force claim pursuant to 42 U.S.C. § 1983 against Defendant, Joshua Allison**

32. Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

33. Pursuant to the Fourth Amendment of the United States Constitution, a police officer is required to use objectively reasonable force to execute a lawful arrest.

34. Defendant Joshua Allison used unreasonable, overly excessive force when Plaintiff initially complied with Defendant's order and was placed under arrest. The excessive use of force occurred when Defendant body slamming Plaintiff into the hard gravel pavement, which caused the initial injuries to Plaintiff's head.

35. Defendant Joshua Allison used unreasonable and unnecessary force when he forcibly grabbed and slammed Plaintiff's head into the cement wall during when Plaintiff was being booked at the Erie Police Department. Plaintiff was already handcuffed and was not resisting when the Defendant slammed him into the concrete wall.

36. By slamming Plaintiff into the hard gravel ground while he was in handcuffs and was not resisting Defendant's orders, Defendant, Joshua Allison used excessive and unreasonable force.

37. Never once did Plaintiff attempt to evade arrest or pose a threat to

Defendant, Joshua Allison when Defendant Allison used unreasonable, Excessive and unjustified force to slammed Plaintiff into a gravel ground and concrete wall.

38. By using unnecessary and excessive force, Defendant Joshua Allison violated the Fourth Amendment, as Defendant Allison deprived Plaintiff of his right not to be subjected to an unreasonable seizure of his person.

39. This constitutes a civil rights violation pursuant to 42 U.S.C. §1983.

40. A direct result of Defendant use of excessive force is that Plaintiff suffered significant physical, emotional, and psychological injuries.

41. Plaintiff now suffers from extreme emotional distress, routine anxiety attacks and unnecessary panic, sleepless nights, pain and ongoing suffering and unrelieved headache.

42. The actions of the Defendant Joshua Allison were intentional, wanton, malicious and completely indifferent to Plaintiff's rights, therefore entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff asks for judgment in his favor, and against Defendant Joshua Allison for compensatory damages plus costs, reasonable attorney fees pursuant to 42 U.S.C. § 1988 and any other relief the Court deems appropriate.

## COUNT II
## Assault and Battery against Defendant Joshua Allison

43. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

44. Because Defendant Joshua Allison used unnecessary and excessive force in arresting Plaintiff, Defendant is liable to Plaintiff for assault and battery.

45. The actions of the Defendant Joshua Allison were intentional, wanton, malicious and completely indifferent to Plaintiff's rights, therefore entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff asks for judgment in his favor, and against Defendants Joshua Allison for compensatory damages, punitive damages and any other relief the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby makes a demand for a trial by jury on all triable issues.

Date: Jan  3, 2021                                Respectfully submitted,

/s/ Charles Kwalonue Sunwabe Jr.
Charles Kwalonue Sunwabe, Jr. Esq
PA I.D. # 313368
SUNWABE Law Firm, LLC
1001 State Street, Suite 524
Erie, Pennsylvania 16501
Voice (814) 367-4313
Facsimile (814) 367-4312
sunwabelaw@gmail.com